UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG TON,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>KRISTI NOEM et al.,<br><br>　　　　Defendants. | Case No. 5:25-cv-02033-SB-AGR<br><br>ORDER DENYING APPLICATION FOR PRELIMINARY INJUNCTION [DKT. NO. 4] |

　　　Petitioner Long Ton, born in a refugee camp in Hong Kong, came to the United States 45 years ago. After being convicted of a gang-related homicide, he was ordered removed in 2007, held in immigration detention for nearly six months, and released under an order of supervision. Almost 20 years later, on May 2, 2025, he was redetained and has been held by immigration authorities ever since. In this lawsuit, he alleges that his detention violates the Immigration and Nationality Act (INA) and its implementing regulations, as well as his due process rights. He also seeks a preliminary injunction requiring his immediate release. For the reasons discussed below, the motion is denied.

I.

　　　Petitioner was born in a refugee camp in Hong Kong in 1979. Dkt. No. 4–1 Ex. C. He was admitted to the United States as a refugee in December 1980 and became a permanent resident in 1982. *Id.* Ex. F. Despite being born in Hong Kong, he claims he is a citizen of Vietnam, not China. Petitioner is married to a U.S. citizen, has three U.S.-citizen children, serves as guardian for his deceased brother's two children, and is the primary caregiver for his elderly, ailing father.

　　　In 2002, Petitioner was convicted of voluntary manslaughter and participating in criminal street gang activity and sentenced to six years and eight months in prison. *Id.* Ex. H, at 40 of 109. After serving the majority of his

1

sentence, he was transferred to immigration detention in April 2007. An immigration judge subsequently ordered him removed to Vietnam or, alternatively, to China. *Id.* Ex. D. Petitioner was released from immigration custody in December 2007 because the government was unable to remove him to either country. Since his release, he has regularly reported to immigration officials under an order of supervision.

In 2021, Petitioner was granted a certificate of rehabilitation from the criminal court, and his conviction was subsequently vacated. *Id.* Ex. A, at 6 of 109, Exs. H, I. He was resentenced to less than one year in custody on a lesser charge of assault. *Id.* Exs. H, I. Based on his post-conviction relief, he moved to reopen his immigration case. The immigration judge denied his motion, and that decision is currently on appeal before the Board of Immigration Appeals. *Id.* Exs. J, K.

On May 2, 2025, upon reporting for supervision, Petitioner was redetained by immigration authorities. He has been held at the Adelanto Immigration and Customs Enforcement (ICE) Processing Center since his detention. More than three months later, Petitioner filed a habeas corpus petition in this case. Along with the petition, he filed an application for a temporary restraining order, which the Court has construed—at Petitioner's request—as a motion for a preliminary injunction. Dkt. Nos. 1, 4, 8–12.

Petitioner does not challenge the validity of the removal order. Instead, he asserts that the revocation of his release violated the Department of Homeland Security's (DHS) own regulations and that his continued detention after the exhaustion of the 90-day statutory removal period violates the INA and the Fifth Amendment Due Process Clause. Through the habeas petition and this motion, he seeks to compel ICE to release him until ICE can execute the removal order. Dkt. No. 4. He also submits letters from friends and family supporting his motion to reopen his removal case. Dkt. No. 4-1 Ex. L. The government opposes, arguing that the Court lacks jurisdiction to review the detention decision and that preliminary relief is otherwise not warranted under the factors in *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

II.

The government raises two threshold issues—one about jurisdiction and the other about the nature of the requested relief—neither of which has merit.

First, the government asserts that the court lacks jurisdiction under 8 U.S.C. § 1252(g) to hear Petitioner's challenge to the government's decision to detain him pending his removal. Section 1252(g) strips courts of jurisdiction over "any cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." But this provision does not apply to petitions for review of continued detention after the statutory removal period has been exhausted. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (finding that the various provisions in the INA limiting judicial review of deportation decisions, including § 1252(g), do not apply to habeas corpus proceedings "as a forum for statutory and constitutional challenges to post-removal-period detention"); *see also Kim Ho Ma v. Ashcroft,* 257 F.3d 1095, 1101 n.4 (9th Cir. 2001) (holding that § 1252 did not bar consideration of habeas petition raising nonconstitutional challenges to § 1231(a)(6) post-removal period detention under *Zadvydas*); *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (§ 1252(g) does not bar review of due process claims related to deportation procedures because such claims constitute "'general collateral challenges to unconstitutional practices and policies used by the agency.'") (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)). Government counsel admitted at oral argument that §1252(g) would only bar judicial review to the extent Petitioner challenges his removal. Because Petitioner is not challenging his removal, the Court has jurisdiction to consider the merits of the motion.

Second, the government states that Petitioner's preliminary injunction motion is improperly seeking the "ultimate relief" sought in his habeas petition—release from immigration detention—rather than preservation of the status quo. Dkt. No. 6 at 5. But the petition challenges the propriety of revoking his release, and thus the controversy—as government counsel conceded at oral argument—is over his redetainment. *See Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("[T]he 'status quo' refers to the legally relevant relationship between the parties before the controversy arose.") (cleaned up); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (The status quo *ante litem* is "the last uncontested status which preceded the pending controversy").

Thus, the Court will consider the merits of the motion for preliminary relief.

III.

To obtain a preliminary injunction, a plaintiff must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury, (3) that the balance of hardships tips in his favor, and (4) that an injunction is in the public

interest. *Winter*, 555 U.S. at 20. In the Ninth Circuit, a preliminary injunction may issue where there are only "serious questions going to the merits" provided that the "balance of hardships . . . tips sharply toward the plaintiff" and the other elements of the *Winter* test are met. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (cleaned up). "A preliminary injunction is an extraordinary remedy" that may be granted only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 24. The party seeking the injunction bears the burden of proving these elements, *see Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009), and "[t]he burden of proof at the preliminary injunction phase tracks the burden of proof at trial." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 423 (2006)).

IV.

Applying these principles, the Court first considers Petitioner's related claims under the INA and Fifth Amendment and then addresses his claim under the APA.

A.

Petitioner contends that his detention violates the INA and the Fifth Amendment Due Process Clause.

The INA requires detention of removable aliens during a 90-day removal period, 8 U.S.C. § 1231(a)(1), and permits continued detention under § 1231(a)(6), but only for the time "reasonably necessary" to effect removal, because indefinite detention would raise Fifth Amendment Due Process concerns. *Zadvydas*, 533 U.S. at 689–90. The presumptively reasonable period for removal is six months. *Id.* at 680. After that period, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (quoting *Zadvydas*, 533 U.S. at 689–701). Thus, *Zadvydas* places the initial burden on the alien to show that detention under § 1231 is no longer reasonable. *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (citation omitted).

Petitioner fails to satisfy his burden. He first attempts to shift the burden, arguing that "ICE has not produced anything to show that China will accept [him]." Dkt. No. 7 at 2. He then points to the length of his detention—nearly nine

4

months in total—to argue that his removal is unconstitutionally indefinite. Dkt. No. 4 at 5. This showing is insufficient to conclude that his detention is not reasonable under § 1231 and *Zadvydas* because neither the duration of detention nor uncertainty about the date of removal necessarily renders detention indefinite. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (distinguishing between detention of uncertain duration where removal is possible and detention where removal is not feasible due to institutional barriers such as a lack of repatriation agreement with the country of removal); *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (providing as examples of "no significant likelihood of removal" where the country of removal refuses to accept him or the removal is barred by U.S. law).

Petitioner also fails to identify any legal or institutional barriers to his removal because, despite asserting that he is not a Chinese citizen (even though he was born in Hong Kong), he provides no evidence that he cannot be removed to China. *Cf. Kim Ho Ma*, 257 F.3d at 1115 (finding no reasonable likelihood of foreseeable removal where the U.S. had no repatriation agreement with the country of removal and that country did not accept deportees from the U.S.); *Vaskanyan v. Janecka*, No. 5:25-CV-01475-MRA-AS, 2025 WL 2014208 (C.D. Cal. June 25, 2025) (finding likelihood of success in seeking release from post-removal detention where the countries of removal would not recognize petitioner's citizenship, issue travel documents, or accept him without additional paperwork that he could not procure). The government, on the other hand, has submitted a declaration stating that it has requested travel documents from China for Petitioner, and that "China has been issuing travel documents when ICE has made such requests for Hong Kong nationals." Dkt. No. 6-1 ¶¶ 12–13. At the hearing, Petitioner admitted that there is no evidence that China will not accept him.

Accordingly, Petitioner has not shown a likelihood of success on the merits of his INA and Fifth Amendment claims.

B.

Petitioner also brings an APA claim, arguing that the government violated its own regulations by revoking his release without showing a significant likelihood of his removal based on "changed circumstances." 8 C.F.R. § 241.13(i)(2). He seeks to set aside the agency's revocation decision on the basis that it was made "without the observance of procedure required by law." Dkt. No. 1 (quoting 5 U.S.C. § 706(2)(D)). Because he fails to provide basic

5

information or analysis to support his APA challenge, he has not shown that he is likely to succeed on the merits of this claim.

Section 241.13 "establishes special review procedures" for aliens who are detained after the removal period, "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Under the regulation, the alien may make a written request for release, showing that there is no significant likelihood of removal to the designated country. *Id*. at § 241.13(d). The request triggers an agency review process and a written decision. *Id*. at § 241.13(e)–(g). The regulation also contemplates revocation of release in certain circumstances. *Id*. at § 241.13(i). As relevant here, the regulation provides:

> The [government] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

*Id*. at § 241.13(i)(2).

Although Petitioner contends that the government has violated this regulation, he provides little more than conclusory assertions about the facts and the law, stating:

> Petitioner was detained on May 2, 2025, and continues to be detained, without evidence of changed circumstances that he may be removed in the reasonably foreseeable future, in violation of 8 C.F.R. § 241.13(i) and the APA. He has been detained in excess of three months and nothing has changed in his case to effectuate removal. "Petitioner has also shown it is likely that there is no change in circumstances such that Petitioner will be removed to Vietnam in the reasonably foreseeable future as required by § 241.13(i)(2)." *Hoac v.*

6

*Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *5 (E.D. Cal. July 16, 2025).

Dkt. No. 1 at 9–10; *see also* Dkt. No. 4 at 9–10 (providing similarly conclusory assertions).

Petitioner's cursory challenge raises more questions than it answers.

First, Petitioner has not shown that § 241.13 applies here.[1] Multiple immigration regulations address the detention of aliens under final orders of removal, including § 241.4—which does not require changed circumstances to revoke an alien's release. *See* 8 C.F.R. § 241.4(l)(2)(iii) (permitting revocation of release "in the exercise of discretion when. . . [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien"). While § 241.13 refers to changed circumstances, the regulation provides for "special review procedures" when initiated by a detained alien who "provide[s] good reason to believe there is no significant likelihood of removal . . . ." *Id*. at § 241.13(a).

Second, while Petitioner claims that the government failed to follow the procedures in § 241.13, he presents no procedural information—including whether he "provided good reason to believe there is no significant likelihood of removal" to China (or Vietnam). His declaration is virtually silent about the process: he does not state whether he was provided a reason for the revocation of his release, whether he made a request for release, whether he was interviewed, or whether the agency rendered a written decision. *Id*. at § 241.13(d)–(g) (describing the formal request-and-review process). When asked at the hearing whether the record in this case contained any evidence of the challenged process, his counsel responded: "I just have the absence of evidence. . . . I have nothing."[2] And when asked to identify the final agency decision to be reviewed, his counsel responded: "I mean, I don't know, I think there's supposed to be an interview that is done under the regulation. . . ." Plaintiff has not shown in these circumstances that there is a final agency action subject to APA review, much less that the government failed to observe its own procedures in reaching its decision. *See Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008)

---

[1] Neither party addresses this issue.

[2] Petitioner's counsel also stated that she recently received a "90-day review," but the record contains no evidence of such review.

("[F]inality is a jurisdictional requirement to obtaining judicial review under the APA.").[3]

Third, Petitioner has not shown that release is the appropriate remedy for any APA violation. "Where a court holds an agency action unlawful, vacatur and remand is the default remedy under the APA, but the court retains equitable discretion in limited circumstances to remand a decision without vacatur while the agency corrects its errors." *Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) (cleaned up). As with any equitable remedy, the proper scope of relief turns on the nature and consequences of the regulatory violation. *See id*. Without a clear definition of the violation, a court cannot fashion an appropriate remedy.

V.

On this barren record, Petitioner has not shown a likelihood of success on the merits of his INA, Fifth Amendment, or APA claims, nor has he raised serious questions going to the merits. He therefore has not demonstrated entitlement to the preliminary relief he seeks. *See California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (cleaned up) ("Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, [the court] need not consider the other factors."). The motion is denied.

Date: September 3, 2025

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

[3] After the hearing, Petitioner submitted supplemental authority from two district courts—*Orellana v. Baker*, No. 1:24-cv-01788-TDC (D. Md. Aug. 25, 2025), and *Delkash v. Noem*, No. 5:25-cv-01675 (C.D. Cal. Aug. 28, 2025). In both cases, the courts found the government violated regulatory procedures by failing to give the detainee proper notice and an interview. These cases are distinguishable. Here, unlike in *Orellana* and *Delkash*, Petitioner has not provided any evidence that he requested, or was denied, any process required by § 241.13—the regulation on which he bases his APA claim. Dkt. No. 4 at 10.